IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. 2:25-cr-20406-TLP

MARTIN WRAY,

Defendant.

# MOTION TO SUPPRESS SEARCH

Comes now the defendant, Martin Wray, who moves the Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, to suppress any and all physical evidence whether tangible or intangible; any statements or admissions alleged to have been made by Mr. Wray; any and all observations of law enforcement officers and any other tangible or intangible evidence obtained during, or as a direct or indirect result from, the search of Mr. Wray's vehicle on December 2, 2025, by law enforcement officers without a search warrant and without Mr. Wray's consent.

## FACTS

On December 2, 2025, Tennessee Highway Patrol Sargeant, Bryan Moore, conducted a traffic stop on a Toyota Camry on Winchester Road in Memphis. Mr. Wray was driving the

Toyota. He complied by pulling into a Sunoco Fuel Station at the corner of Winchester and Hermitage Drive. He stopped the Toyota at a fuel pump.

Officer Moore got out of his car and approached the Wray vehicle from the rear, driver's side. Another officer was with Officer Moore and approached the Wray vehicle from the passenger side. Just before Officer Moore arrived at the Wray vehicle, Mr. Wray opened his driver's side door. Officer Moore told him, "Put it in park. Your tag ain't real on your car." Mr. Wray responded, "I am going to pick up my kids at school." Officer Moore asked Mr. Wray to step out of the Toyota. Mr. Wray complied. Officer Moore instructed Mr. Wray to turn around and face the car. Mr. Wray complied. Officer Moore began patting Mr. Wray down and asked him if he had any weapons on him. Mr. Wray answered, "No."

After the pat-down, Officer Moore asked if there was anything illegal in the car. Mr. Wray answered, "Nothing in the car." Officer Moore said, "It smells like weed in the car, man." Mr. Wray said, "I smoked weed." "When did you smoke weed?" "Probably about 30 minutes ago."

Officer Wray then said, "Alright. Lean up against the bumper back there," and motioned to the rear of the Toyota. Officer Moore asked, "Have you got an I.D. on you?" Mr. Wray responded, "In my wallet…" and started walking toward the front of the car. Officer Wray interrupted him and said, "I'll get it." Mr. Wray returned to where he had been standing and said pointing, "The wallet is in the door right there." Officer Moore retrieved the wallet and removed Mr. Wray's state identification card. Officer Wray then returned to his car and ran the driver's license. Officer Moore never requested permission to search the Toyota.

By the time Officer Moore returned to the Toyota, two other officers were standing by the car, one holding a handgun that the officer was saying he did not know how to clear. Officer

Moore’s report indicates that while he was running Mr. Wray’s I.D., F.B.I. Agent, B. Toler, located and seized a Haskell JS-45 .45 caliber pistol from under the driver’s seat. Another agent, HSI Agent Piazza opened the glove box and found a plastic container holding 5 grams of marijuana.

LAW

The Fourth Amendment protects “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. amend. IV. In general, “the Fourth Amendment requires police officers to obtain a warrant prior to conducting a search.” United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007). [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). The government bears the burden of demonstrating that an exception to the warrant requirement applies. United States v. Jeffers, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951).

The interior of a vehicle is a constitutionally protected area, into which a government official is not permitted to intrude without probable cause. New York v. Class, 475 U.S. 106, 114-15, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986) ("[A] car's interior as a whole is subject to Fourth Amendment protection from unreasonable intrusions by the police."); United States v. Jones, 565 U.S. 400, 404, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012) ("It is beyond dispute that a vehicle is an 'effect' as that term is used in the [Fourth] Amendment.") (quoting, United States v. Chadwick, 433 U.S. 1, 12, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977)).

Officers found the evidence used to indict Mr. Wray inside of Mr. Wray's vehicle and without a warrant and without Mr. Wray's consent. For the search to be reasonable, an exception to the warrant requirement must apply. Katz, 389 U.S. at 357.

## CONSENT TO SEARCH

If a person has the authority to consent to a search and voluntarily does so, law enforcement does not need a warrant. Mr. Wray was never asked if he consented to the search of the vehicle. "It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search. Consent to a search may be in the form of words, gesture, or conduct. In whatever form, consent has effect only if it is given freely and voluntarily." United States v. Carter, 378 F.3d 584, 586 (6th Cir. 2004) (*en banc*). Valid consent must "be determined from the totality of all the circumstances." Carter, 378 F.3d 584, 587 (affirming denial of motion to suppress).

Mr. Wray was never asked for his consent to search the vehicle. That simple act could have greatly simplified this process. But it was never tried.

## PLAIN VIEW DOCTRINE

Under certain circumstances an officer may seize evidence in plain view without a warrant. United States v. Mathis, 738 F.3d 719, 732 (6th Cir. 2013) (citing, Arizona v. Hicks, 480 U.S. 321, 326-27, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987)). "[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968). Under the plain view doctrine, four factors must be satisfied: "(1) the

item seized must be in plain view, (2) the item's incriminating character must be immediately apparent, (3) the officer must lawfully be in the place from where the item can be plainly seen, and (4) the officer must have a lawful right of access to the item." Mathis, 738 F.3d at 732.

Agent Piazza found the marijuana in the glove box. Agent Toler found the firearm under the driver's seat. Neither of these locations would logically be considered in "plain view."

AUTOMOBILE EXCEPTION

Officers may search a vehicle without a warrant if they have "probable cause to believe that the vehicle contains evidence of a crime." United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007); United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998); Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir.1998). Traditionally, this exception was based on the "ready mobility" of the automobile, which created "an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search [was] clear." Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996) (quoting, California v. Carney, 471 U.S. 386, 390-91, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985).

Mr. Wray was never asked for his consent to search; but when asked about the smell of marijuana, his response was that he had smoked marijuana about 30 minutes before the traffic stop. There is no evidence where Mr. Wray was 30 minutes before the stop. The smell of marijuana alone does not provide probable cause to search the car. United States v. James, 575 Fed. Appx. 636, 640, 2014 U.S. App. LEXIS 15638, *9, 2014 FED App. 0613N (6th Cir.), 2014 WL 3930465. Mr. Wray could have smoked marijuana in a poorly ventilated home and carried the smell of marijuana on his person when he entered his car. In Memphis, the odor of marijuana may be detected to various degrees anywhere (including public buildings), anytime in the

presence of anybody. That is counterintuitive in a jurisdiction where the possession of marijuana is illegal. But in Memphis, reality trumps intuition.

Mr. Wray was subjected to a standard Terry search. But that search is not at issue. What is at issue is the search of the Toyota.

The only thing that would have connected marijuana with Mr. Wray's Toyota and provided probable cause to search the car would have been an officer who testifies that there was marijuana in plain sight in the car. Quite to the contrary, Agent Piazza discovered the marijuana by opening the closed glove box.

This case is distinguishable from United States v. James, *Ibid*. In James, the Sixth Circuit concluded that the smell of marijuana on the defendant's person was sufficient to provide probable cause to search the defendant's vehicle. But that conclusion was reached in the context of the "totality of the circumstances," which included the defendant's evasive conduct after the officers clearly signaled him to stop; officers observed James accelerate and fail to heed one or more stop signs while a police cruiser followed him with its lights and sirens activated; the strong smell of marijuana emanating from his person immediately upon exiting his vehicle; and an immediate search of defendant that confirmed that he did not have any marijuana on him.

The totality of the circumstances in this case is very different. Mr. Wray had taken no evasive actions before or after being signaled to come to a stop. He pulled safely off the street and obeyed the officer when the officer told him to put his car in park and to produce his I.D.

Officer Moore smelled the odor of marijuana. But he took no action to determine if the smell was emanating from the car or from Mr. Wray's person. Until there was some connection between the car and the odor, the grounds for probable cause to search the car was the (often ubiquitous) smell of marijuana and a bad tag on the car.

## SEARCH INCIDENT TO ARREST

Under this exception, "[p]olice may conduct a search of a vehicle incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." United States v. Alexander, 954 F.3d 910, 917 (6th Cir. 2020). Under this exception, (1) Mr. Wray's arrest must have been lawful (i.e., supported by probable cause and not otherwise unlawful), and (2) it must have been reasonable for the police to believe that evidence of the crime for which he is arrested would be found in his vehicle. United States v. Williams, 2023 U.S. App. LEXIS 14055, *6, 2023 FED App. 0253N (6th Cir.), 2023 WL 3815097F.3d at 917. Thus, in order for the search of Mr. Wray's vehicle to be justified as a search incident to arrest, (1) his arrest must have been lawful (i.e., supported by probable cause and not otherwise unlawful), and (2) it must have been reasonable for the police to believe that evidence of the crime of arrest would be found in his vehicle.

Mr. Wray was presumably still standing at the rear of the Toyota while Officer Moore entered his patrol car to run Mr. Wray's I.D. There is no evidence on the video that Mr. Wray was handcuffed by either of the other two officers on the scene. There was no arrest to be analyzed for lawfulness while the search was transpiring. Even if there was an arrest, it would not have been based on probable cause. At that point there was nothing illegal in the plain view of the investigating officers and there was nothing that would differentiate whether the smell of marijuana was emanating from the car or from the person of Mr. Wray.

## EXIGENT CIRCUMSTANCES

When there is an immediate need to act to prevent destruction of evidence, escape of a suspect, or harm to individuals, officers may conduct a search without a warrant. A warrantless seizure of an automobile is reasonable if there is "probable cause that an automobile contains evidence or fruits of a crime plus 'exigent circumstances.'" United States v. Beck, 511 F.2d 997, 1001 (6th Cir. 1975).

Without probable cause, the question of exigent circumstances is never reached. The Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), stated that "the word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Id*. at 461, 91 S. Ct. at 2035. The Court in Coolidge distinguished between the seizure of an automobile parked in the defendant's driveway and one that the police have stopped and is readily mobile. *Id*. at 461 n.8, 91 S. Ct. at 2036.

In this case, the search occurred before probable cause had been established. No contraband was in plain sight. The smell of marijuana had not been logically associated with the Toyota. Law enforcement put the cart before the horse by searching before there was probable cause to do so. Exigent circumstances would only have become an issue once probable cause was established and there was known or suspected contraband that could be lost without an immediate search.

## COMMUNITY CARETAKING EXCEPTION

Officers may conduct a search without a warrant if it is necessary for community caretaking purposes, such as ensuring public safety. Community caretaking is a subset of exigent circumstances. While it is not possible to articulate a succinct yet exhaustive list of

circumstances that qualify as "exigent," the situations in which warrantless entries are justified as lying within one of four general categories: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others. United States v. Johnson, 22 F.3d 674, 680 (6th Cir. 1994). The last example encompasses the community caretaker function.

The community caretaker function has most frequently excused a warrantless entry in cases where the Government is acting in something other than a traditional law enforcement capacity. In Michigan v. Tyler, 436 U.S. 499, 509, 98 S. Ct. 1942, 1950, 56 L. Ed. 2d 486 (1978), the Court recognized that "[a] burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.'" The cases citing the community caretaker function uniformly cite the need for prompt action by government personnel and conclude that delay to secure a warrant would be unacceptable under the circumstances. Schmerber v. California, 384 U.S. 757, 770-71, 86 S. Ct. 1826, 1835-36, 16 L. Ed. 2d 908 (1966); United States v. Rohrig, 98 F.3d 1506, 1517, (6th Cir. 1996).

The traffic stop in this case was due to a bad car tag on the Toyota. Enforcement of vehicle registration law is a traditional police function. A stop of this nature does not typically require law enforcement to go outside of its usual police duties. What happened on December 2, 2025, would not invoke the community caretaker exception to the requirement of probable cause and a search warrant. And it should not in this case.

## INVENTORY SEARCHES

When law enforcement lawfully impounds a vehicle, they may conduct an inventory search of the vehicle's contents without a warrant. South Dakota v. Opperman, 428 U.S. 364,

369-71, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Colorado v. Bertine, 479 U.S 367, 372, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). In order to be deemed valid, an inventory search may not be undertaken for purposes of investigation, and it must be conducted according to standard police procedures. United States v. Smith, 510 F.3d 641, 650 (6th Cir. 2007) (quoting United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998)).

The search of the Toyota took place well in advance of any seizure of the car. In fact, it specifically took place for purposes of investigation, a purpose that is patently prohibited.

## CONCLUSION

For all the reasons stated above, this court should grant Mr. Wray's motion to suppress any and all evidence seized pursuant to the unlawful search of the Toyota as being fruit of the poisonous tree.

Respectfully submitted,

s/Stephen R. Leffler
Law Office of Stephen R. Leffler, P.C.
2670 Union Ave., Ext. Suite 819
Memphis, TN 38112
(901) 527-8830
Stephen@Lefflerlaw.com